# In re G-C-L-, Respondent

*Decided April 10, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The Board of Immigration Appeals withdraws from its policy of granting untimely motions to reopen by applicants claiming eligibility for asylum based solely on coercive population control policies, effective 90 days from the date of this decision. *Matter of X-G-W-*, Interim Decision 3352 (BIA 1998), superseded.

FOR RESPONDENT: Stephen P. Gleit, Esquire, New York, New York

BEFORE: Board En Banc: SCIALABBA, Acting Chairman; DUNNE, Vice Chairman; SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, COLE, GUENDELSBERGER, ROSENBERG, GRANT, MOSCATO, MILLER, BRENNAN, ESPENOZA, OSUNA, OHLSON, and HESS, Board Members. Dissenting Opinion: PAULEY, Board Member, joined by FILPPU, Board Member.

SCHMIDT, Board Member:

The applicant has filed an untimely motion to reopen exclusion proceedings seeking to apply for asylum under section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a) (2000), based on punishment for violating China's coercive population control policies. We will reopen proceedings on our own motion pursuant to 8 C.F.R. § 3.2(a) (2001) in keeping with the policy that we established in *Matter of X-G-W-*, Interim Decision 3352 (BIA 1998). However, 90 days after the issuance of this order, we will withdraw from this policy and will no longer consider, on our own motion, untimely motions to reopen asylum claims that are based solely on coercive population control policies.

## I. ISSUES PRESENTED

The issues presented are the following: (1) whether we should grant the applicant's untimely motion to reopen under our decision in *Matter of X-G-W-*, *supra*; (2) whether the applicant qualifies for asylum based on punishment for violating China's coercive population control policies; and (3) whether we should continue our policy of granting such untimely motions.

## II. FACTUAL AND PROCEDURAL HISTORY

The applicant is a native and citizen of China who arrived in the United States on March 4, 1992. On July 13, 1992, he applied for asylum, claiming persecution on account of China's coercive population control policies. The applicant testified that he and his wife had their first child in 1986, that his wife underwent a forced abortion in 1987, and that they had their second child in 1989. In order to have the second child registered, his wife had to be sterilized. The applicant stated that he and his wife were required to pay fines on two occasions. In addition, he offered into evidence receipts showing payment of the fines, along with radiological reports of an x-ray film verifying that his wife was sterilized.

In a decision dated March 8, 1995, the Immigration Judge found that the applicant presented credible testimony that, as punishment for violating China's "one couple, one child" policy, his wife was forced to undergo an abortion and was subsequently sterilized, and that both he and his wife were fined on two separate occasions. The Immigration Judge denied the applicant's asylum application, however, pursuant to our decision in *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989), wherein we held that enforcement of China's family planning policy does not, in itself, create a well-founded fear of persecution based on race, religion, nationality, membership in a particular social group, or political opinion. *See also Matter of G-*, 20 I&N Dec. 764 (BIA 1993). In a decision dated December 4, 1995, we dismissed the applicant's appeal on the same basis.

On November 20, 2001, the applicant moved to reopen these proceedings based on changes to the law enacted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). Specifically, section 601(a)(1) of the IIRIRA, 110 Stat. at 3009-689, amended the definition of a "refugee" by adding the following language:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or [be] subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (2000).

### III. *MATTER OF X-G-W-*

Because of the foregoing change in asylum law, we announced in *Matter of X-G-W-*, *supra*, that we would allow reopening of proceedings to pursue

asylum claims based on coerced population control policies, pursuant to our authority under 8 C.F.R. § 3.2(a) to "reopen or reconsider on [our] own motion any case in which [we have] rendered a decision." We stated further that we would grant reopening where the alien had presented persuasive evidence of persecution based on China's "one couple, one child" policy, and where we had previously denied asylum based on *Matter of Chang*, *supra*.

## IV.  ANALYSIS

At the outset, we accept the Immigration Judge's positive credibility finding.  *See Matter of A-S-*, 21 I&N Dec. 1106 (BIA 1998).  We find further that, under the definition of a "refugee" in section 101(a)(42) of the Act, as amended by section 601(a)(1) of the IIRIRA, the applicant has established that he suffered past persecution in China on account of political opinion and is therefore presumed to have a well-founded fear of future persecution under 8 C.F.R. § 208.13(b)(1) (2001).  *See Matter of X-G-W-*, *supra*; *Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997); *Matter of X-P-T-*, 21 I&N Dec. 634 (BIA 1996).

This presumption may be rebutted by a showing that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution if returned to China.   8 C.F.R. § 208.13(b)(1)(i)(A).  The Immigration and Naturalization Service offered no rebuttal evidence during the hearing below and has not submitted any response to the applicant's motion.  A motion shall be deemed unopposed unless a timely response is made.  8 C.F.R. § 3.2(g)(3) (2001).

The applicant meets the criteria set forth in  *Matter of X-G-W-*, *supra*. Moreover, his motion satisfies the regulatory requirements for reopening and is supported by evidence of prima facie eligibility for asylum based on the definition of a "refugee" articulated in section 601(a)(1) of the IIRIRA.  *See* section 101(a)(42) of the Act.  We find that there is no basis to deny relief in the exercise of discretion.  Therefore, we will reopen proceedings, grant the application for asylum on a conditional basis, and grant the application for withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1994).

## V.  CHANGE IN POLICY

Effective 90 days from the date of this decision, we withdraw from the policy we announced in *Matter of X-G-W-*, *supra*, and will no longer grant reopening on our own motion under 8 C.F.R. § 3.2(a) for asylum claims based solely on coercive population control policies.  Such motions will be

subject to the time and number limitations on motions, and to the exceptions thereto, as set forth at 8 C.F.R. §§ 3.2(c)(2) and (3).

The policy we stated in *Matter of X-G-W-*, *supra*, arose from the dilemma that resulted following a marked change in asylum law, which was intended to provide relief to those suffering persecution on account of coercive population control policies, but which was seriously (if unintentionally) impeded by regulations designed to bring finality to immigration proceedings. *See* 8 C.F.R. § 3.2(c)(2). We intended the policy to afford individuals both a means to promptly respond to the change in law and a reasonable period of time in which to do so. We specifically noted that the applicant in *Matter of X-G-W-* had promptly filed his motion to reopen.

More than 5 years have passed since the enactment of section 601(a)(1) of the IIRIRA, and the interest of finality in immigration proceedings now takes precedence. Individuals with final orders of exclusion or deportation have had a very reasonable period of time in which to seek relief. Accordingly, we now find it appropriate to discontinue the policy we announced in *Matter of X-G-W-*, *supra*. However, to allay any concerns regarding notice to potential applicants for relief who may have relied on our precedent decision, we will continue to apply the policy stated in *Matter of X-G-W-* to motions to reopen filed within 90 days of the date of this decision.

## VI. CONCLUSION

The applicant's motion to reopen under *Matter of X-G-W-*, *supra*, will be granted, as will his applications for relief. However, the discretionary policy of reopening announced in *Matter of X-G-W-* will expire 90 days from the date of this decision.

**ORDER:** The motion to reopen is granted.

**FURTHER ORDER:** The applicant is granted asylum, conditioned upon an administrative determination by the Immigration and Naturalization Service that a number is available for such a grant under section 207(a)(5) of the Act, 8 U.S.C. § 1157(a)(5) (2000).

**FURTHER ORDER:** The applicant is granted withholding of deportation.

*DISSENTING OPINION:* Roger A. Pauley, Board Member, in which Lauri Steven Filppu, Board Member, joined

The Board is to be commended for determining to end its once-but-no-longer-salutary policy or practice, first announced in *Matter of X-G-W-*, Interim Decision 3352 (1998), of (assuming the alien was and is found credible) granting untimely motions to reopen asylum proceedings based on claims of coercive population control arising from the change in the

definition of a "refugee" in section 601(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-689 ("IIRIRA").[1]  However, I conclude (for reasons set forth infra) that more than a reasonable amount of time has now been afforded aliens to file such claims.  Unlike the majority, which nevertheless grants relief in this case and creates a further 90-day period during which other similarly situated aliens may file motions and expect to have them granted by the Board, I believe that relief here is not merited and that the majority's approach is misguided.  The majority's action, though undoubtedly well-intentioned, has the effect of perpetuating unfairness.

In 1996, Congress amended the definition of a "refugee" in section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (Supp. II 1996), to include resistance to a foreign country's coercive population control program as a basis for asylum eligibility.  Prior to that time, the Board had construed the Act as not encompassing such opposition or resistance as being within one of the grounds "on account of" which persecution must be shown in order to establish statutory asylum eligibility. *See Matter of Chang*, 20 I&N Dec. 38 (BIA 1989).  Pertinent to this case, Congress in the IIRIRA also amended the asylum statute to impose a deadline for the filing of asylum claims of not later than 1 year from the alien's arrival in the United States.  Section 208(a)(2)(B) of the Act, 8 U.S.C. § 1158(a)(2)(B) (Supp. II 1996).  The only exception is set forth in section 208(a)(2)(D) of the Act and is triggered if the alien demonstrates "changed circumstances" that "materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [1-year] period specified in subparagraph (B)."  In enacting these time restrictions, Congress made no exception for claims based on the expanded ground for asylum it simultaneously created, predicated on resistance to coercive population control programs (i.e., these claims, too, are subject to the 1-year limit and the applicable exceptions).

Under implementing regulations, the Attorney General has interpreted the "changed circumstances" provision to include, among others, "changes in applicable U.S. law" that materially affect an applicant's eligibility for asylum.  8 C.F.R. § 208.4(a)(4)(i)(B) (2001).  Of most relevance for purposes of the instant case, the regulations also provide that an applicant who demonstrates changed circumstances "shall file an asylum application within a reasonable period given those 'changed circumstances.'"  8 C.F.R. § 208.4(a)(4)(ii).  The upshot of these "changes in applicable U.S. law" is that aliens with asylum claims based on the new definition of a "refugee" in the IIRIRA, who did not previously file an asylum claim, were given a

---

[1] As explained herein, however, I would have abandoned the policy long ago, finding that a "reasonable period" for filing such motions had lapsed.

"reasonable period" in which to do so (apart from rare "extraordinary circumstances" cases that are not at issue here).

It is instructive to compare the situation of this class of aliens, whose "reasonable period" presumably expired long ago, with the situation of the alien before us and others like him who waited years after the same change in law to file a motion to reopen asylum proceedings (in which, not surprisingly, their claims had been denied for failure to establish the "on account of" nexus required by the definition of a "refugee" as it existed prior to the change in law in 1996). No reason is evident why the latter class of aliens, who invoke the Board's discretion with respect to a motion to reopen, should be treated more generously than, or any differently from, the former class of aliens who reasonably withheld bringing an unavailing asylum claim that was predicated solely on opposition or resistance to coercive population control programs and who, under the regulations, were afforded only a "reasonable period" to do so after enactment of the IIRIRA.

Inasmuch as Congress indicated generally in the IIRIRA that an appropriate period for instituting an asylum application is within 1 year of an alien's arrival in this country, I would be inclined (though the issue need not be resolved here with exactitude) to hold that a "reasonable period" for bringing an asylum claim based on "changed circumstances" is also 1 year from the point at which the circumstances changed, barring extraordinary reasons. The alien in this case, in contrast, filed his motion to reopen based on the amended definition of a "refugee" on November 20, 2001, more than 5 years after the change in law that he relied upon.[2] This is not a "reasonable period" by any stretch of the imagination. Accordingly, I would deny relief.

The question remaining to be addressed, in light of the majority's contrary disposition, is whether denial of the instant motion is fair, or whether, by contrast, aliens should be given notice of the Board's intent to end its practice, given that the Board, in a series of nonprecedent decisions after *Matter of X-G-W-*, *supra*, has generally opted to grant such untimely motions. I believe denial of relief at this time is proper and that no further period in which to file such motions (under the expectation they will be granted) is appropriate. The practice heretofore followed by the Board finds no purchase in the *X-G-W-* decision, the only precedent the Board has issued on this question, which strongly implied that promptness in filing the motion would

---

[2] The Board's decision in *Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997), interpreting the amended definition of a "refugee" in the IIRIRA to encompass spouses of aliens who were forcibly subjected to conception-preventing medical procedures, abortion, or sterilization—a decision certified to the Attorney General but on which no determination at that level has yet been rendered—may be regarded (whether or not one agrees therewith) as not sufficiently foreseeable that the 1-year "reasonable period" should run from the date of that decision (June 4, 1997) rather than the effective date of the IIRIRA. Under my approach, it makes no difference to the resolution of this case which date is used.

be a determinative consideration.[3]  Thus, any reliance on the practice is unjustified,[4] as the Board's decision in *Matter of X-G-W-* itself (as well as the regulation at 8 C.F.R. § 208.4(a)(4)(ii), applicable to an analogous group of aliens, that created a "reasonable period" for bringing asylum claims based on a change in applicable United States law) afforded adequate notice that aliens should not expect to have more than a reasonable period (much less an indefinite time) in which to advance their claims.

   As an adjudicative body, the Board's duty, in my view, is to apply the laws that it has been entrusted to interpret in an appropriate manner.  I cannot subscribe to the implicit rationale undergirding the majority's opinion that only commencing 90 days hence (an arbitrary interval adopted in regulation-like fashion) will the granting of such motions be inappropriate. Aliens in the position of this movant have been the recipients, for approximately 4 or 5 years by my reckoning (*see infra* note 2), of a policy that, although right and proper when announced in 1998 in *Matter of X-G-W-*, *supra*, long ago lost its reasonable underpinnings with the passage of time. In this context, for the majority to continue that practice for 90 additional days, thereby possibly encouraging an unknown number of aliens to submit more such untimely claims before the deadline, is neither required nor wise. I am aware of no court decision that holds in abeyance a correction of an outdated practice in order that an affected class of potential litigants, who previously might have benefitted from the practice, may have a further period in which to attain relief.  The majority should act to end the practice now, not to extend it.

   I therefore respectfully dissent.

---

[3]  Notably, in *Matter of X-G-W-*, *supra*, at 3, the Board pointed out in granting the alien's motion to reopen that there was no indication that the "the applicant in this proceeding delayed applying for asylum."  And although the Board did not reference the 1-year time limit in section 208(a)(2)(B) of the Act or the changed circumstances exception thereto in section 208(a)(2)(D) or the accompanying regulations, the opinion reflects that the motion to reopen in *X-G-W-* was filed on February 6, 1997, within 1 year of the effective date of the IIRIRA and the expanded definition of a "refugee," and the Board further observed, therefore, that the applicant "has filed his motion promptly following the new developments." *Matter of X-G-W-*, *supra*, at 3.

[4]  The majority nowhere indicates it would require a showing of such reliance.