# In re E-L-H- et al., Respondents

*Decided by Board August 18, 2005*
*Decided by Attorney General December 1, 2004[1]*
*Decided by Board January 30, 1998[2]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A precedent decision of the Board of Immigration Appeals applies to all proceedings involving the same issue unless and until it is modified or overruled by the Attorney General, the Board, Congress, or a Federal court. *Matter of E-L-H-*, 22 I&N Dec. 21 (BIA 1998), reaffirmed.

FOR RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Theresa A. Repede, Appellate Counsel

BEFORE:  Board En Banc:  OSUNA, Acting Vice Chairman; HOLMES, HURWITZ, FILPPU, COLE, GRANT, MOSCATO, MILLER, HESS, and PAULEY, Board Members.[3]

HOLMES, Board Member:

In *Matter of E-L-H-*, 22 I&N Dec. 21 (BIA 1998), we denied a motion to reconsider by the former Immigration and Naturalization Service, now the Department of Homeland Security ("DHS"), holding that in finding the respondent eligible for asylum, we had appropriately relied on a Board precedent decision that had been referred to Attorney General Reno and was pending her review.  The Commissioner of the Immigration and Naturalization Service referred our decision in *Matter of E-L-H-* to the Attorney General for review.  On December 21, 2004, in *Matter of E-L-H-*, 23 I&N Dec. 700 (A.G. 2004), Attorney General Ashcroft vacated our decision and remanded for further consideration in light of an intervening unpublished decision of Attorney General Reno in *Matter of A-H-*, A.G. Order No. 2380-2001 (A.G. Jan. 19,

---

[1] The Attorney General's December 1, 2004, decision in this case was published as *Matter of E-L-H-*, 23 I&N Dec. 700 (A.G. 2004).

[2] The Board's January 30, 1998, decision in this case was published as *Matter of E-L-H-*, 22 I&N Dec. 21 (BIA 1998).

[3] Chairman Lori L. Scialabba did not participate in the decision in this case.

2001), included as an attachment to the Attorney General's decision in *Matter of E-L-H-*, *supra*, at 701.[4]

After considering the Attorney General's decision in *Matter of A-H-*, we reaffirm our decision in *Matter of E-L-H-*. The issue in *Matter of A-H-* was whether an unpublished Board decision could be executed pending Attorney General review. *Matter of A-H-* did not address the precedential effect of a published Board decision referred for Attorney General review, which is the issue now before us. As discussed below, we find that under the plain language of the regulatory provision addressing the controlling effect of Board precedent decisions, and the recently promulgated case management regulations requiring prompt and timely adjudication of Board decisions, a Board precedent decision applies to all proceedings involving the same issue unless and until it is modified or overruled by the Attorney General, the Board, Congress, or a Federal court.

## I. FACTUAL AND PROCEDURAL HISTORY

The issue in this case arose in the context of the respondent's application for asylum, which was based on a claim that he had been persecuted in China for having violated the Government's family planning restrictions on the permissible number of children. In deportation proceedings in 1996, the respondent testified that he and his wife married in 1975 and that after the birth of their two children, the authorities learned of his wife's third pregnancy and forcibly aborted the child. The respondent and his wife were subsequently fined for having two more children in violation of the family planning laws. When the respondent's wife became pregnant again, the authorities again sought to abort the pregnancy, but she was able to evade them. The authorities forcibly sterilized the respondent in December 1984. The respondent and his family then left China in order to avoid further problems related to family planning.

In a decision issued on September 4, 1996, the Immigration Judge indicated that she accepted the respondent's account as credible but denied asylum based on the Board's decision in *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989), that the Chinese Government's enforcement of the family planning law did not constitute persecution within the meaning of the Act. The respondent appealed to the Board.

On September 30, 1996, a few weeks after the Immigration Judge's decision, Congress amended the term "refugee" in section 101(a)(42) of the Immigration and Naturalization Act, 8 U.S.C. 1101(a)(42) (Supp. II 1996), to include a person who has been persecuted for resistance to a coercive population control

---

[4] The Attorney General's Order No. 2380-2001 in *Matter of A-H-* was an interim order. The Attorney General recently issued a decision on the merits in *Matter of A-H-*, 23 I&N Dec. 774 (A.G. 2005).

program.[5]  On August 29, 1997, we issued a decision finding the respondent eligible for asylum and withholding of removal under the amended definition of a "refugee."  In so ruling, we relied, in part, on our precedent decision in *Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997), which held that an alien whose spouse was forcibly sterilized may establish past persecution on account of political opinion within the meaning of section 101(a)(42) of the Act.[6]

In a motion to reconsider, the Service argued that the Board should not have relied on *Matter of C-Y-Z-* because that case had been referred to the Attorney General for review.  The Service based its argument on 8 C.F.R. § 3.1(d)(2) (1997), which provided in relevant part, that "[t]he decision of the Board shall be final except in those cases reviewed by the Attorney General in accordance with paragraph (h) of this section."[7]

On January 30, 1998, we denied the Service's motion to reconsider, finding that our decision in *Matter of C-Y-Z-* remained controlling unless modified or overruled by the Attorney General.  In so holding, we relied on 8 C.F.R. § 3.1(g) (1997), a provision directly addressing the effect of the Attorney General's review on the Board's precedent decisions.  At the time of our decision in *Matter of E-L-H-*, 8 C.F.R. § 3.1(g) provided as follows:

> *Except as they may be modified or overruled by the Board or the Attorney General*, decisions of the Board shall be binding on all officers and employees of the Service or Immigration Judges in the administration of the Act, and selected decisions

---

[5]  The amended definition of a "refugee" in section 101(a)(42) of the Act provides:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

[6]  As the respondent had been subjected to forced sterilization, our decision of August 29, 1997, also referred to our holding in *Matter of X-P-T-*, 21 I&N Dec. 634 (BIA 1996), that an applicant who has been forcibly sterilized for violating the coercive population control policies of China has suffered past persecution and is presumed to have a well-founded fear of future persecution.  Our reliance on *Matter of X-P-T-*, *supra*, in finding the respondent eligible for asylum was not addressed by the Service in its motion to reconsider, or in our subsequent decision denying the motion to reconsider.

[7]  On October 18, 1999, 8 C.F.R. 3.1(d)(2), the regulation on finality of decisions, was renumbered as 8 C.F.R. § 3.1(d)(3).  *See* Executive Office for Immigration Review; Board of Immigration Appeals: Streamlining, 64 Fed. Reg. 56,135, 56,141 (Oct. 18, 1999).  This provision was later moved to 8 C.F.R. § 1003.1(d)(6) (2004), and then to 8 C.F.R. § 1003.1(d)(7) in 2005.  *See* Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743, 4752 (Jan. 31, 2005) (interim, effective Apr. 1, 2005) .

designated by the Board shall serve as precedents in all proceedings involving the same issue or issues.

(Emphasis added.)  We relied on this language to find that a published Board decision retains precedential effect unless modified or overruled by the Board or the Attorney General.  *Matter of E-L-H-*, 22 I&N Dec. at 22.  We therefore concluded that we had not erred in applying *Matter of C-Y-Z-* as controlling authority.

In April 1998, the Service referred our decision denying reconsideration in *Matter of E-L-H-* to the Attorney General for review.  As indicated above, the Attorney General, on December 21, 2004, remanded our decision for further consideration.

On the same day that the Attorney General remanded *Matter of E-L-H-*, he denied the Service's request for review of the Board's decision in *Matter of C-Y-Z-*.[8]  Now that the Attorney General has declined to review *Matter of C-Y-Z-*, the issue as to whether the Board properly relied on *Matter of C-Y-Z-* as a precedent decision in deciding *Matter of E-L-H-* is moot.  Although we generally limit our review to issues affecting the outcome of the case before us, we understand the Attorney General's remand order in this case as a mandate that we further consider the question whether a published Board decision retains precedential force upon referral to the Attorney General.

## II.  ISSUE

The question before us is whether the legal principles established in *Matter of C-Y-Z-* were applicable to other cases involving the same issue during the period between the Service's referral of *Matter of C-Y-Z-* to the Attorney General in April 1998 and the Attorney General's decision in December 2004 declining to review the case.  Stated more broadly, the question is whether a Board precedent decision applies to cases involving the same issue when our precedent decision has been referred to the Attorney General for review.  We find that a published Board decision has precedential effect unless and until modified or overruled by the Attorney General, the Board, Congress, or a Federal court.

## III.  ANALYSIS

As discussed below, *Matter of A-H-*, *supra*, does not address the controlling effect of Board precedent decisions referred to the Attorney General for review.  The long-accepted understanding based on the plain language of 8 C.F.R. §§ 3.1(g) and (h), now at 8 C.F.R. §§ 1003.1(g) and (h) (2005), has been that a

---

[8]  The Attorney General's decision states: "The request of the Commissioner of the Immigration and Naturalization Service to certify for review the captioned decision of the Board of Immigration Appeals pursuant to 8 C.F.R. § 3.1(h)(1)(iii) (2002) is denied." *Matter of C-Y-Z-*, 23 I&N Dec. 693 (A.G. 2004) (footnote omitted).

Board precedent decision retains precedential force unless and until modified or overruled by the Attorney General. The Federal circuit courts have uniformly recognized the precedential effect of the Board's decision in *Matter of C-Y-Z-* following referral of that decision to the Attorney General for review. The 2002 case management regulations addressing the Board's role in publishing precedent decisions and setting case completion deadlines also confirm that under 8 C.F.R. § 1003.1(g), the Board's precedent decisions, unless otherwise ordered by the Attorney General, continue to have precedential effect after referral to the Attorney General for review. *See* Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878 (Aug. 26, 2002).

## A. Regulatory Framework

For over 50 years, the Attorney General has delegated to the Board the responsibility for interpreting and applying the immigration laws and regulations. The current regulatory framework for publishing Board precedent decisions and referral of Board decisions to the Attorney General has been in place since 1952, when the regulation provided, as it does today, that "[e]xcept as they may be modified or overruled by the Board or the Attorney General, . . . selected decisions designated by the Board shall serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. § 6.1(g) (1952); *see also* Board of Immigration Appeals: Appeals; Reopening and Reconsideration, 17 Fed. Reg. 11,469, 11,475 (Dec. 19, 1952).[9]

Since we last addressed the issue presented in this case in *Matter of E-L-H-* in 1998, the relevant provisions have been amended in some respects to reflect statutory and regulatory developments. First, the Board's responsibilities for publishing precedent decisions and for timely managing its caseload were clarified by regulations promulgated in 2002. Second, in 2003, the Immigration and Naturalization Service was eliminated and its functions transferred to the newly created Department of Homeland Security. The regulations have been reorganized and renumbered to reflect these changes in responsibility for interpretation and enforcement of the immigration laws. The amendments to the relevant regulatory provisions since our 1998 decision in *Matter of E-L-H-* are discussed below.

We begin with the provision directly addressing the effect of Board precedent decisions. In 1998, 8 C.F.R. § 3.1(g) provided:

> *Decisions of the Board as precedents.* Except as they may be modified or overruled by the Board or the Attorney General, decisions of the Board shall be

---

[9] The 1952 regulation addressed the referral of Board decisions to the Attorney General at 8 C.F.R. § 6.1(h), and the finality of decisions at 8 C.F.R. § 6.1(d). These provisions correspond to those now found at 8 C.F.R. § 1003.1(h) (2005) and 8 C.F.R. § 1003.1(d)(7). *See* 70 Fed. Reg. at 4752.

binding on all officers and employees of the Service or Immigration Judges in the administration of the Act, and selected decisions designated by the Board shall serve as precedents in all proceedings involving the same issue or issues.

This provision was amended in 2003 to reflect the transfer of Service responsibilities and authority to the newly created Department of Homeland Security. Renumbered as 8 C.F.R. § 1003.1(g), this paragraph now provides:

*Decisions as precedents.* Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board, and decisions of the Attorney General, shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States. By majority vote of the permanent Board members, selected decisions of the Board rendered by a three-member panel or by the Board en banc may be designated to serve as precedents in all proceedings involving the same issue or issues. Selected decisions designated by the Board, decisions of the Attorney General, and decisions of the Secretary of Homeland Security to the extent authorized in paragraph (i) of this section, shall serve as precedents in all proceedings involving the same issue or issues.

8 C.F.R. § 1003.1(g) (2005). The newly inserted sentence regarding selection of Board decisions as precedents was formerly found at 8 C.F.R. § 3.1(a)(5) (2002).

Pursuant to 8 C.F.R. § 1003.1(i), selected decisions of the Secretary of the Department of Homeland Security may be published after approval by the Attorney General. See also 8 C.F.R. § 103.3(c) (2005), to the same effect. The Board, however, selects decisions for publication without the concurrence or preapproval of the Attorney General. *Compare* 8 C.F.R. § 1003.1(g) *with* 8 C.F.R. §§ 103.3(c), 1003.1(i).

Any Board decision, published or unpublished, may be referred to the Attorney General for review pursuant to 8 C.F.R. § 1003.1(h). This provision, amended in 2003 to reflect the replacement of the Service by the Department of Homeland Security, now provides:

*Referral of cases to the Attorney General.* (1) The Board shall refer to the Attorney General for review of its decision all cases that:
(i) The Attorney General directs the Board to refer to him.
(ii) The Chairman or a majority of the Board believes should be referred to the Attorney General for review.
(iii) The Secretary of Homeland Security, or specific officials of the Department of Homeland Security designated by the Secretary with the concurrence of the Attorney General, refers to the Attorney General for review.

(2) In any case the Attorney General decides, the Attorney General's decision shall be stated in writing and shall be transmitted to the Board or Secretary, as appropriate, for transmittal and service as provided in paragraph (f) of this section.[10]

8 C.F.R. § 1003.1(h).

The provision addressing finality of Board decisions, former 8 C.F.R. § 3.1(d)(3) (2000), has not been substantively amended. Now located at 8 C.F.R. § 1003.1(d)(7), the current version of the regulation provides:

> *Finality of decision.* The decision of the Board shall be final except in those cases reviewed by the Attorney General in accordance with paragraph (h) of this section. The Board may return a case to the Service [DHS] or an immigration judge for such further action as may be appropriate, without entering a final decision on the merits of the case.

Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743, 4752 (Jan. 31, 2005) (interim, effective Apr. 1, 2005) (to be codified at 8 C.F.R. § 1003.1(d)(7)).

Other relevant amendments, newly promulgated in 2002 to address timely adjudication of Board decisions, are discussed in Part E, below.

## B. Issue in *Matter of A-H-*

In *Matter of A-H-*, 23 I&N Dec. at 701 (attachment to the Attorney General's decision in *Matter of E-L-H-*), the issue before the Attorney General was whether an unpublished Board decision granting asylum to the respondent should be given effect by the Service pending review of the merits of the asylum claim by the Attorney General. The Attorney General issued an interim order and decision finding that the Board's grant of asylum was not "final" within the meaning of 8 C.F.R. § 3.1(d)(3) (2000) and therefore should not be given effect pending Attorney General review of the merits.[11]

In so holding, the Attorney General observed in *Matter of A-H-*, 23 I&N Dec. at 701, that the reference to "final" decisions in 8 C.F.R. § 3.1(d)(3) appeared to be in tension with the directive in 8 C.F.R. § 3.1(g) that Board decisions remain "binding" on the Service and Immigration Judges "except as they may be

---

[10] The regulation at 8 C.F.R. § 1003.1(f) provides that the "decision of the Board shall be in writing" and specifies how copies of the decision shall be provided to the Service and the alien or other party affected.

[11] At the time the Attorney General decided *Matter of A-H-*, the "final decision" provision at 8 C.F.R. § 3.1(d)(3) (2000) had been inadvertently deleted and overwritten by amendments of June 27, 2000 (attorney disciplinary rule). The "final decision" provision was not restored to the regulations until August 26, 2002, as 8 C.F.R. § 1003.1(d)(6). *See* 67 Fed. Reg. at 54,898 (Supplementary Information). The provision is now located at 8 C.F.R. § 1003.1(d)(7).

modified or overruled by the Board or the Attorney General." The Attorney General noted that it is

> possible to understand this language to indicate that Board decisions, unless stayed by the specific, affirmative act of the Attorney General or the Board itself, become *effective* immediately upon issuance and, unless they are so *stayed*, must be *executed by* the Service and by Immigration Judges even after being certified to the Attorney General and while pending review.

*Id*. at 701-02 (emphasis added). The Attorney General expressed concern that the "uncertainty engendered by the interplay of sections 3.1(d)(3) and 3.1(g)" required decisions on whether to order a stay on very short notice, thereby preventing "orderly and efficient Attorney General review of Board decisions." *Id*. at 702. She then concluded as follows:

> In my judgment, sections 3.1(d)(3) and 3.1(g) can and ought to be harmonized in a manner that avoids such administrative difficulties. I conclude, therefore, that, in accordance with its plain terms, section 3.1(d)(3) renders a Board decision that has been referred to the Attorney General non-final and without effect. Thus, a referral operates as an automatic stay without a need for any further action of the Attorney General. Section 3.1(g) gives binding effect to a *final* decision of the Board, and thus does not apply to a decision that is pending on a referral. In accordance with the terms of section 3.1(d)(3), therefore, if a Board decision has been certified to the Attorney General, it is neither final nor effective during the pendency of the Attorney General's review (or for a later period, if the Attorney General so decides). A Board decision may not be executed while it is not final (unless the Attorney General specifically orders otherwise).

*Id.* (footnote omitted). Applying this reasoning, the Attorney General concluded that "the decision of the Board, having been certified to me by the Commissioner, is to be stayed pending completion of the Attorney General's review of the merits of the Board's decision." *Id*. at 702-03.

The Attorney General's statement in *Matter of A-H-* that 8 C.F.R. § 3.1(g) "gives binding effect to a *final* decision of the Board, and thus does not apply to a decision that is pending on a referral," must be read in the context of the issue presented, i.e., execution of the judgment in an individual case. *Id.* at 702. It is well understood that an administrative decision is not to be executed in an individual case until a final decision is rendered. When finality of the Board's decision is relevant, the starting point for analysis is 8 C.F.R. § 3.1(d)(3). Under this provision, a judgment may not be executed if the Board's decision is referred to the Attorney General for review.

By way of contrast, a published Board decision need not be "final" within the meaning of 8 C.F.R. § 3.1(d)(3) in order to have precedential effect. For example, although the Board does not ordinarily entertain interlocutory appeals, a published decision addressing an Immigration Judge's interlocutory order has precedential force. *See, e.g.*, *Matter of Amico*, 19 I&N Dec. 652 (BIA 1988). Similarly, a Board decision remanding a case to an Immigration Judge for

further consideration of an issue is not a final decision, but, if published, it must be applied as a precedent decision. *See, e.g.*, *Matter of Azurin*, 23 I&N Dec. 695 (BIA 2005) (resolving the issue on appeal and remanding the record to the Immigration Court for further consideration).

Under recently promulgated regulations, when the Board grants an application for relief from removal, the Board is directed to remand the case to the Immigration Judge with instructions to allow the DHS to complete the necessary background investigations and report the results to the Immigration Judge. *See* 70 Fed. Reg. at 4748, 4752 (to be codified at 8 C.F.R. § 1003.1(d)(6)). The introductory information to the regulation states that a Board decision granting relief and remanding to permit completion of the background check "will be an order remanding the case and *not* a final decision." 70 Fed. Reg. at 4748 (emphasis added). Nonetheless, there is no doubt that such a decision, if published, would have the force of precedent as to the legal principles established in the Board's decision. As these examples illustrate, a Board decision need not be a final decision in order to have precedential effect.

In addressing 8 C.F.R. § 3.1(g) in *Matter of A-H-*, the Attorney General quoted only the clause indicated below in italics.

> Decisions of the Board as precedents. *Except as they may be modified or overruled by the Board or the Attorney General, decisions of the Board shall be binding on all officers and employees of the Service or Immigration Judges in the administration of the Act*, and selected decisions designated by the Board shall serve as precedents in all proceedings involving the same issue or issues.

(Emphasis added.) She did not quote or refer to the portions of the regulation that are specifically addressed to precedent decisions, i.e., the caption and the final clause. Nor does *Matter of A-H-* mention precedent decisions at any point in the analysis.

When the issue is the effect of a precedent decision, there is no need for harmonization of 8 C.F.R. §§ 3.1(d) and 3.1(g) because the directly applicable provision, 8 C.F.R. § 3.1(g), clearly provides that published Board decisions retain precedential effect unless modified or overruled by the Attorney General. Therefore, the Attorney General's determination that the terms of 8 C.F.R. § 3.1(g) do not override the "finality" requirement of 8 C.F.R. § 3.1(d) was addressed to situations in which "finality" is relevant, i.e., a request to stay the execution of the disposition in an individual case.[12]

---

[12] Whether a decision is "final" is generally relevant in a number of different contexts throughout the law, including execution of judgments, res judicata, collateral estoppel, and appellate review. *See, e.g.*, *Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002) (finding no jurisdiction to review a case in which there was not yet a final order of removal). In other contexts, however, including "law of the case" for unpublished decisions and precedential effect for published decisions, finality of the decision is not a determinative factor.

An elemental rule of construction is that we should apply the plain meaning of regulatory provisions. *Matter of Artigas*, 23 I&N Dec. 99 (BIA 2001). The DHS argument that published Board decisions must be "final" decisions in order to have precedential effect ignores the plain meaning of 8 C.F.R. § 3.1(g). Such a construction of the regulatory provisions would render meaningless and superfluous the "modified or overruled" language of that section and violate the principle that we should "'give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (quoting *Inhabitants of Montclair Township v. Ramsdell*, 107 U.S. 147, 152 (1883)). As indicated in the following section, both the Board and the circuit courts have applied the plain language of 8 C.F.R. § 3.1(g) in recognizing the controlling effect of published Board decisions pending Attorney General review.

## C.  Case Law Regarding the Effect of Board Precedent Decisions

The long-accepted understanding of the precedential effect of Board decisions has been that published Board decisions remain binding unless modified by the Board, the Attorney General, Congress, or a Federal court. In *Matter of G-*, 20 I&N Dec. 764 (BIA 1993), the Board addressed the question whether its decision in *Matter of Chang*, *supra*, that enforcement of China's one child policy was not persecution, retained precedential force. Following the Board's decision in *Chang*, the Attorney General issued policy guidelines and an interim regulation indicating that aliens fleeing their country's family planning policies of forced abortions or sterilizations may be considered to have a well-founded fear of persecution on account of political opinion. *See* Refugee Status, Withholding of Deportation, Asylum; Burden of Proof, 55 Fed. Reg. 2803, 2805 (Jan. 29, 1990) (interim rule). Although the Board's decision in *Matter of Chang* was not referred to the Attorney General, the Board subsequently referred two decisions involving the *Chang* family planning issue to the Attorney General for review under the provisions of 8 C.F.R. § 3.1(h) (1993).

In *Matter of G-*, *supra*, at 777, we addressed the effect of these referrals as follows:

> Pending the decision of the Attorney General on these referred cases, we will continue to follow *Matter of Chang*, *supra*, as precedent in all proceedings involving the same issues, including the case now before us. *See* 8 C.F.R. § 3.1(g) (1993). Accordingly, we will deny the applicant's request for a stay of these appellate proceedings pending the Attorney General's review of the two referred cases.

Thus, although we had referred cases involving the issue in *Chang* to the Attorney General for review and the Attorney General had submitted a final regulation which would have explicitly overruled *Matter of Chang*, we held that *Chang* retained precedential force unless and until overruled by the Attorney General. *Id.*

Since our decision in *Matter of G-* in 1993, the Federal circuit courts have also relied on the regulation at 8 C.F.R. § 3.1(g) in recognizing the effect of Board precedent decisions. In *Chen v. Carroll*, 866 F. Supp. 283 (E.D. Va. 1994), the court found that we properly applied our precedent decision in *Matter of Chang* in our 1994 decision affirming an Immigration Judge's denial of asylum. Noting that the Attorney General's final rule overruling our decision in *Chang* had never been published, the court explained:

> Unless modified or overruled by the Board or the Attorney General, decisions of the Board are binding on all Immigration Law Judges. 8 C.F.R. § 3.1(g) (1994). The Attorney General may modify or overrule a Board decision through the referral process prescribed in 8 C.F.R. § 3.1(h) (1994) or through issuance of an effective regulation. As discussed above, none of the regulations addressing the issues in *Chang* were effective at the time of the IJ's decision in this case. Furthermore, the Attorney General has neither modified nor overruled *Chang*. Thus, *Chang* remains in force and was valid, binding precedent for the IJ and Board's decisions.

*Chen v. Carroll*, *supra*, at 287 (footnote omitted); s*ee also Wang v. Slattery*, 877 F. Supp. 133 (S.D.N.Y. 1995); *Gao v. Waters*, 869 F. Supp. 1474 (N.D. Cal. 1994) (and cases cited therein).

In the 7 years between the Service's referral and the Attorney General's denial of the Service's request for review of *Matter of C-Y-Z-*, we issued additional precedent decisions further developing the legal principles established in *Matter of C-Y-Z-*. *See, e.g.*, *Matter of G-C-L-*, 23 I&N Dec. 359 (BIA 2002) (granting reopening to an applicant who qualified for asylum under the Board's holding in *Matter of C-Y-Z-*); *see also Matter of Y-T-L-*, 23 I&N Dec. 601 (BIA 2003) (reaffirming our analysis and holding in *Matter of C-Y-Z-* and finding that where an alien has established past persecution based on the forced sterilization of his spouse, the fact that the alien and his spouse face no further threat of forced sterilization is not a "fundamental change" in circumstances sufficient to meet the standards for a discretionary denial of asylum). Significantly, neither the Service nor DHS argued in these cases that *Matter of C-Y-Z-* lacked precedential effect because it had been referred to the Attorney General. Nor has the Service or the DHS, to our knowledge, raised this issue in any of the thousands of unpublished decisions of the Immigration Judges or the Board applying the holding in *Matter of C-Y-Z-* during this period.

Federal circuit court decisions have also recognized the precedential effect of *Matter of C-Y-Z-* after its referral to the Attorney General. *See Lin v. Ashcroft*, 385 F.3d 748, 753 (7th Cir. 2004) ( recognizing *Matter of C-Y-Z-*'s extension of asylum protections to the spouse of an individual subjected to forced sterilization); *Ge v. Ashcroft*, 367 F.3d 1121 (9th Cir. 2004) (finding that the alien was eligible for asylum under *Matter of C-Y-Z-* where he showed that his wife was forced to undergo an abortion under China's one-child policy); *Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir. 2004) (recognizing *Matter of C-Y-Z-* and noting that "[t]he BIA and the courts have uniformly applied the statute's protections to husbands whose wives have undergone abortions or

sterilization procedures"); *Qui v. Ashcroft*, 329 F.3d 140 (2d Cir. 2003) (recognizing the applicability of *Matter of C-Y-Z-* to a claim involving forced sterilization of the respondent's wife); *He v. Ashcroft*, 328 F.3d 593 (9th Cir. 2003) (reversing the adverse credibility finding and recognizing the applicability of *Matter of C-Y-Z-* to an alien who testified that his wife had been involuntarily sterilized); *Zhao v. United States Dept. of Justice*, 265 F.3d 83 (2d Cir. 2001) (reversing the Board's denial of a motion to reopen and remanding to the Board for examination of the case in light of *Matter of C-Y-Z-).*

As discussed below, had mere referral of the Board's decision in *Matter of C-Y-Z-* nullified its effect as controlling authority, the critical legal issues decided in *Matter of C-Y-Z-* would have remained unresolved and thousands of cases would have lingered for years pending before Immigration Judges and the Board until the Attorney General either declined review or addressed the issues referred.

## D.  The Board Speaks for the Attorney General in Issuing Precedent Decisions

The Board functions as the agent of the Attorney General "charged with the review of those administrative adjudications under the Act that the Attorney General may by regulation assign to it."  8 C.F.R. § 1003.1(d)(1) (2005).  The Attorney General has directed that the Board "through precedent decisions, shall provide clear and uniform guidance to the Service [now the DHS], the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations."  *Id*.  Although the Attorney General retains ultimate authority over the meaning of immigration laws and regulations, the Board is charged and entrusted with the responsibility for issuing precedent decisions interpreting the immigration laws and regulations.  In so doing, the Board acts on the Attorney General's behalf.[13] Under this principal/agent framework, the Board's interpretation of the immigration law, when set forth in a published Board decision, remains an authoritative statement of the law unless modified or overruled by the Attorney General.

The mere referral of a published Board decision for Attorney General review does not negate the controlling effect of the Board's interpretation of the immigration law.  In some respects, the provision for Attorney General review

---

[13]   In issuing precedent decisions, the Board Members act as the "delegates" of the Attorney General.  8 C.F.R. § 1003.1(a)(1) (2005).  The Supplementary Information accompanying the 2002 case management regulations confirm that the "'Board acts on the Attorney General's behalf rather than as an independent body.  The relationship between the Board and the Attorney General thus is analogous to an employee and his superior rather than to the relationship between an administrative agency and a reviewing court.'" 67 Fed. Reg. at 54,883 (quoting *Matter of Hernandez-Casillas*, 20 I&N Dec. 262, 289 n.9 (A.G. 1991; BIA 1990)).

is akin to a certiorari process in which the Attorney General may decline the request to review the case referred, as he did in *Matter of C-Y-Z-*, *supra*. *See Matter of Cazares*, 21 I&N Dec. 188 (A.G. 1997; BIA 1996, 1997) (declining to review Board interpretations in light of subsequent legislation addressing the issue); *Matter of Ponce de Leon*, 21 I&N Dec. 154 (A.G. 1997; BIA 1996, 1997); *see also Matter of Farias*, 21 I&N Dec. 269 (A.G. 1997; BIA 1996, 1997) (remanding to the Board with directions to reconsider whether the savings clause in legislation overruling the Board's decision applied to the respondent's case).

In some cases, such as *Matter of E-L-H-*, the Attorney General has *explicitly* vacated a referred Board decision and remanded for further consideration based on subsequent developments. *See also Matter of R-A-*, 22 I&N Dec. 906 (A.G. 2001; BIA 1999) (vacating the Board's decision that a woman who had been abused by her husband was not a member of a "particular social group" for purposes of protection under the asylum law, and remanding for reconsideration after publication of a proposed regulation on gender-based persecution). In *Matter of N-J-B-*, 21 I&N Dec. 812, 841 (A.G., BIA 1997), the Attorney General directed the Board to refer the decision for review and specifically vacated the Board's decision "pending [the Attorney General's] further determination."

Were mere referral to the Attorney General sufficient to nullify the precedential effect of a Board decision, there would have been no need for the Attorney General to order that the Board's decision be vacated. Rather, on a case-by-case basis, the Attorney General decides whether to nullify the precedential effect of a published Board decision before rendering a decision on review. Until the Attorney General indicates otherwise, the Board's precedent decisions on the meaning of the immigration laws or regulations should be applied by the Board, Immigration Judges, and officials of the Department of Homeland Security to pending cases involving the same issue or issues. This has been the clear directive in the controlling regulations for over 50 years. The DHS has not presented convincing arguments that *Matter of A-H-*, which does not address the issue of precedent decisions, was intended to overturn this long-accepted understanding of the effect of Board precedent decisions.

Under the DHS view, a referral of any Board decision would immediately negate the precedential force of that decision. Notably, there is no time limit on when a Board decision may be referred to the Attorney General under 8 C.F.R. § 1003.1(h). A system in which a precedent decision, no matter how long ago rendered, could be negated by the mere act of referral to the Attorney General by the DHS would disrupt the orderly consideration of cases by Immigration Judges and the Board and undermine the delegated authority of the Board, which is acting on behalf of the Attorney General, to interpret the immigration law and to provide guidance on the meaning of immigration laws and regulations. As discussed below, such a system could also significantly delay adjudication of large numbers of cases and disrupt the case management

system implemented by the regulations promulgated in 2002.  67 Fed. Reg. at 54,878.

## E.  Timely Adjudication of Immigration Cases

Under the 2002 case management regulations, the Board is required to "resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations."  8 C.F.R. § 1003.1(d)(1).  The regulations mandate that "[e]xcept in exigent circumstances," all appeals must be completed by a single Board member within 90 days of completion of the record on appeal, or by a three-member panel within 180 days of assignment to a three-member panel.  8 C.F.R. §1003.1(e)(8)(i).  In "exigent circumstances," the Chairman is authorized to grant an extension of 60 days in which to complete the case.  8 C.F.R. § 1003.1(e)(8)(ii).  The only other exception to these case completion deadlines is limited to the

> rare circumstances, when an impending decision by the United States Supreme Court or a United States Court of Appeals, or impending Department regulatory amendments, or an impending *en banc* Board decision may substantially determine the outcome of a case or group of cases pending before the Board.

8 C.F.R. § 1003.1(e)(8)(iii).

Under these circumstances, the Chairman may hold cases, temporarily suspending the time limits described above, until the anticipated decision is rendered, the statute is enacted, or the regulation promulgated.[14]  Notably, the list of exceptions to the case completion time limits does not include a reference to decisions referred to the Attorney General.  Even were this list of "rare circumstances" understood as exemplary, so that an anticipated Attorney General decision in a case on referral might justify suspending the applicable time completion deadlines, the regulations delegate such discretion to the Chairman of the Board, i.e., "the Chairman *may* hold the case or cases." 8 C.F.R. § 1003.1(e)(8)(iii) (emphasis added).  Thus the framework for timely review established by the case management regulations confirms that a Board precedent decision remains effective until the Board or the Attorney General rules otherwise.[15]  If the Attorney General wishes to do so, he may of course

---

[14]  *See* 67 Fed. Reg. at 54,896 (directing the Chairman to inform the Director of EOIR and the Attorney General of all such holds) (Supplementary Information).

[15]  Reliance on Board precedent decisions is an important aspect of the Board's case management system.  For example, in determining whether it is appropriate to summarily affirm an Immigration Judge's decision, the Board is directed to consider whether the issues on appeal "are squarely controlled by existing Board or federal court precedent."  8 C.F.R. § 1003.1(e)(4)(i)(A).  A single Board member may reverse a decision if "reversal is plainly consistent with and required by intervening Board or judicial precedent."  8 C.F.R. § 1003.1(e)(5).

vacate a Board precedent decision pending further review or subsequent developments. *See, e.g.*, *Matter of R-A-*, *supra*.

Were published Board decisions automatically stripped of precedential effect upon referral to the Attorney General, the Board would have to "hold," administratively close, or otherwise delay adjudication in significant numbers of cases for what could be many years. Immigration Judges, likewise, would have to grant continuances in cases involving the issue on referral until addressed by the Attorney General or the Board. Some of these cases will involve detained aliens whose detention will be prolonged until the issue on referral is resolved by the Attorney General.

Under the 2002 case management regulations, the Board has eliminated its backlog of cases and has issued timely decisions under the 90-day and 180-day deadlines. Under the DHS's proposed interpretation of 8 C.F.R. § 1003.1(g), a significant backlog of undecided cases could again develop, clogging the dockets of the Board and the Immigration Courts. Such a result would undermine the principal goals the Attorney General set in the 2002 case management regulations, i.e., reduction of the Board's backlog and prompt adjudication of cases. *See* 67 Fed. Reg. at 54,878. These concerns support our decision to apply the plain language of 8 C.F.R. § 1003.1(g) in resolving this issue.

## IV. CONCLUSION

Based on the plain language of 8 C.F.R. § 1003.1(g), and given the different context and limited scope of the Attorney General's unpublished decision in *Matter of A-H-*, and for the other reasons discussed above, we reaffirm our decision in *Matter of E-L-H-*, 22 I&N Dec. 21 (BIA 1998). We therefore find that a Board precedent decision referred to the Attorney General pursuant to 8 C.F.R. § 1003.1(h) remains applicable to other cases involving the same issue or issues unless and until vacated, modified, or overruled by the Attorney General, the Board, Congress, or a Federal court. We will therefore deny the DHS's motion to reconsider.

**ORDER**: The motion for reconsideration of the Department of Homeland Security is denied.