**Garmei Marie KENNEDY, Petitioner,**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 09–3377.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Aug. 25, 2010.

Opinion Filed: Aug. 27, 2010.

Valentine A. Brown, Esq., Duane Morris, Philadelphia, PA, for Petitioner.

Zoe J. Heller, Esq., Eric H. Holder, Jr., Esq., United States Department of Justice, Thomas W. Hussey, Esq., Melissa L. Neiman–Kelting, Esq., United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for Respondent.

Before: SCIRICA, SMITH and WEIS, Circuit Judges.

OPINION

PER CURIAM.

Garmei Marie Kennedy petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her motion

to reopen her removal proceeding. We will dismiss the petition.

## I.

Kennedy is a citizen of Liberia. An Immigration Judge ("IJ") denied her claims for asylum and other forms of relief and ordered her removal to Liberia. The IJ concluded that Kennedy voluntarily assisted in the persecution of others while in Liberia and is thus ineligible for asylum or withholding of removal under the so-called "persecutor bar." *See* 8 U.S.C. §§ 1101(a)(42), 1158(b)(2)(A)(i) and 1231(b)(3)(B)(i). The IJ also rejected Kennedy's claims on the merits. The BIA summarily affirmed on July 9, 2004. Kennedy did not petition for review, timely or otherwise, so we lack jurisdiction to review these underlying rulings. *See Vakker v. Att'y Gen.*, 519 F.3d 143, 146 (3d Cir.2008) (citing *Stone v. INS*, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995)).

The Supreme Court later decided *Negusie v. Holder*, — U.S. —, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009), in which it remanded for the BIA to reconsider its long-standing position that the persecutor bar applies even if an alien's participation in persecution was involuntary.[1] The IJ found that Kennedy's participation in persecution was voluntary. Although Kennedy did not seek review of that finding, she filed a motion to reopen on the basis of *Negusie*. She acknowledged that her motion was untimely because she did not file it within ninety days of the BIA's previous decision. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2. She requested, however, that the BIA exercise its authority to reopen *sua sponte, see* 8 C.F.R. § 1003.2(a), on the grounds that *Negusie* represents a fundamental change in the law. The BIA denied the motion on July 16, 2009, and Kennedy petitions for review.

## II.

We generally lack jurisdiction to review the BIA's decisions regarding reopening *sua sponte* because the regulation providing for that discretionary authority "offers no standard governing the agency's exercise of discretion." *Calle–Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir.2003). We have recognized an exception permitting review "if an agency 'announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed[.]' " *Id.* (citation omitted). Kennedy argues that we have jurisdiction to review the BIA's ruling in this case because it has announced by course of adjudication a policy of reopening *sua sponte* when there has been a change in the law, which she argues *Negusie* represents.

We disagree. Kennedy relies primarily on three BIA decisions: *In re X–G–W–*, 22 I. & N. Dec. 71 (BIA 1998), *abrogated on other grounds by In re G–C–L–*, 23 I. & N. Dec. 359 (BIA 2002); *In re G–D–*, 22 I. & N. Dec. 1132 (BIA 1999); and *In re Beckford*, 22 I. & N. Dec. 1216 (BIA 2000). These decisions do not establish a general policy of reopening on the basis of a change in the law.

In *In re X–G–W–*, the BIA announced a policy of reopening Chinese coercive family planning cases on the basis of legislation making eligible for asylum certain aliens

---

**1.** The Supreme Court held that the BIA's reasoning was invalid because the BIA believed itself bound on the issue by *Fedorenko v. United States*, 449 U.S. 490, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981), which addressed a different statutory scheme. *See Negusie*, 129 S.Ct. at 1165–66. The Court remanded for the BIA to reevaluate the issue without treating *Fedorenko* as controlling, though it acknowledged that the BIA might nevertheless reach the same conclusion. *See id.* at 1166–67.

who had not been eligible before. 22 I. & N. Dec. at 72–72. This ruling expressly applied only to a limited category of cases (and the BIA has since discontinued the policy, *see In re G–C–L–*, 23 I. & N. Dec. at 361–62). In *In re G–D–*, the BIA declined to reopen on the basis of an asserted change in law that represented only an "incremental" development rather than the kind of "fundamental change" at issue in *In re X–G–W–*. 22 I. & N. Dec. at 1135. The BIA explained that its decisions in these two cases were merely "*examples* of the circumstances in which we deem it appropriate or inappropriate to exercise our sua sponte authority to reopen[.]" *Id.* at 1134–35 (emphasis added). And *In re Beckford* did not involve a change in the law at all. The BIA in that case merely noted that untimely motions to reopen must, "*at a minimum,* . . . demonstrate a substantial likelihood that the result . . . would be changed if reopening is granted." 22 I. & N. Dec. at 1219 (emphasis added). It did not hold that it *would* reopen whenever there was a likelihood of a different result, let alone one based on a change in the law.

In sum, we cannot conclude that the BIA has announced a policy governing the exercise of its discretion under the circumstances presented here. Accordingly, we lack jurisdiction over Kennedy's petition for review and will dismiss it on that basis. The Government's motion for summary action is denied as moot.