Zeferino **MENDEZ–GUTIERREZ,**
**Petitioner,**

v.

John **ASHCROFT, Attorney**
**General, Respondent.**

No. 02–70546.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2003.

Filed Aug. 20, 2003.

Jonathan M. Kaufman, San Francisco, CA, for the petitioner.

Anh–Thu P. Mai, Marshall Tamor Golding, United States Department of Justice Civil Division, Office of Immigration Litigation, Washington, DC, for the respondent.

---

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the

Before: HUG, GIBSON * and FISHER, Circuit Judges.

## OPINION

FISHER, Circuit Judge:

Zeferino Mendez–Gutierrez petitions for review of the decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of the Immigration Judge ("IJ")'s refusal to reinstate his voluntarily withdrawn asylum application. We hold that we have jurisdiction to review the decision of the BIA, and that the BIA abused its discretion by failing to address Mendez–Gutierrez's claim of a well-founded fear of future persecution before concluding that he had not established a prima facie case of eligibility for asylum.

### Factual and Procedural Background

Mendez–Gutierrez is a native and citizen of Mexico who entered the United States without inspection in December 1989. In February 1997, he filed an application for asylum, alleging that he had been persecuted in Mexico by the Mexican Federal Police and the then-ruling party, the Partido Revolucionario Institucional ("PRI"), because he was a member of the opposition party, the Partido Accion Nacional ("PAN"). Mendez–Gutierrez claimed that he was harassed and threatened because his opinions about the government differed from those of the PRI. According to Mendez–Gutierrez, the federal police repeatedly came to his home and threatened him, and on occasion they took him to a desolate place and interrogated him. He stated in his application that "being a member of the P.A.N. has meant the threat of my life if I were to return to Mexico.... I

Eighth Circuit, sitting by designation.

believe that I would be killed if I return to Mexico."

In April 1997, while Mendez–Gutierrez's asylum application was pending, the INS issued a notice to appear, alleging that Mendez was removable from the United States under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), because he had entered the United States on December 1, 1989 without having been admitted or paroled. On May 6, 1997, Mendez–Gutierrez appeared before an Immigration Judge for his removal hearing. Mendez–Gutierrez was represented by counsel, William Gardner, who admitted the allegations in the notice to appear.[1] Apparently operating under the mistaken belief that Mendez–Gutierrez had entered the United States in 1986, counsel informed the judge that Mendez–Gutierrez would be seeking cancellation of removal, which is available only to those aliens who have resided continuously in the United States for a 10-year period prior to applying for cancellation of removal.[2] 8 U.S.C. § 1229b(b)(1)(A). Counsel also withdrew Mendez–Gutierrez's application for asylum. The IJ then continued the hearing until November 3, 1997.

In July 1997, before the removal proceedings resumed, Mendez–Gutierrez applied for cancellation of removal, listing his date of entry into the United States as December 1989. When Mendez–Gutierrez reappeared before the IJ on November 3, 1997 for the continuation of his removal hearing, the IJ denied Mendez–Gutierrez's application for cancellation of removal, finding that he had not resided in the United States for the requisite 10-year period prior to service of the notice to appear. Mendez–Gutierrez's counsel then asked the court to reinstate the asylum application, explaining that he had mistakenly withdrawn the application due to his belief that Mendez–Gutierrez had entered the United States in 1986, and thus was statutorily eligible for cancellation of removal.[3] The IJ denied Mendez–Gutierrez's request to reinstate the asylum application without explanation. Mendez–Gutierrez then requested voluntary departure, but the IJ denied that request as well, due to Mendez–Gutierrez's failure to disclose a prior misdemeanor arrest. The IJ then issued an order of removal.

Mendez–Gutierrez subsequently appealed to the BIA, alleging that the IJ abused his discretion in refusing to reinstate Mendez–Gutierrez's asylum application and in denying his applications for cancellation of removal and voluntary departure. The BIA dismissed the appeal, concluding that Mendez–Gutierrez was statutorily ineligible for cancellation of removal and voluntary departure.[4] Regarding the request to reinstate Mendez–Gutierrez's asylum application, the BIA found that counsel had withdrawn the application based on his erroneous belief that Mendez–Gutierrez had entered the United States in May 1986, and that "[o]nce a question was raised regarding the actual date of entry, which impacted on the respondent's statu-

---

**1.** Counsel stated, "[W]e admit the allegations [in the notice to appear] except alleging in May '86, entry date and residence in the United States since that date."

**2.** The period of continuous residence ends when the alien is served with a notice to appear. *Id.* § 1229b(d)(1).

**3.** Counsel was also mistaken about the nature of the proceedings before the IJ, believing

until the IJ told him otherwise that Mendez was in proceedings for suspension of deportation, rather than cancellation of removal. Counsel explained his confusion by stating that Mendez actually was the client of another attorney, Miguel Gadda, who had informed Gardner that Mendez's case was a straightforward suspension case.

**4.** Mendez–Gutierrez does not appeal those rulings.

tory eligibility for cancellation, counsel reasonably requested the opportunity to renew the asylum application." The BIA further concluded that the IJ's refusal to reinstate the asylum application "may have been error," but that the error did not prejudice Mendez–Gutierrez because he had not established a prima facie case of eligibility for asylum. The BIA found that Mendez–Gutierrez's asylum application "set[ ] forth no past persecution claim," as it contained only vague and general accusations of harassment, with no dates on which any of the alleged incidents of harassment had occurred. The BIA did not address Mendez–Gutierrez's claim of a well-founded fear of future persecution. Mendez–Gutierrez now petitions for review, contending that the BIA erred by requiring him to make a prima facie showing of eligibility for asylum before affording him a hearing on his asylum claim.

## Discussion

### I.

■■■ Before we address the merits of Mendez–Gutierrez's petition, we must first determine whether we have jurisdiction to review the BIA's denial of Mendez–Gutierrez's request to reinstate his asylum application.[5] Under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), this court lacks jurisdiction to review agency actions that are "committed to agency discretion by law." *Id.* This narrow exception to the presumption of reviewability of agency actions "is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (internal quotation marks omitted). In such situations, there is "no meaningful

standard against which to judge the agency's exercise of discretion," and thus "it is impossible to evaluate agency action for abuse of discretion." *Id.* (internal quotation marks omitted). If we conclude that there are no statutes, regulations, established agency policies, or judicial decisions that provide a meaningful standard against which to assess the BIA's refusal to reinstate Mendez–Gutierrez's asylum application, then we must conclude that we lack jurisdiction over Mendez–Gutierrez's petition. *See Ekimian v. INS,* 303 F.3d 1153, 1159 (9th Cir.2002) (looking to statutes, regulations and caselaw for the standards by which to judge an administrative action); *INS v. Yueh–Shaio Yang,* 519 U.S. 26, 32, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996) (holding that an irrational departure from established policy by which an agency exercises its discretion could constitute action that must be overturned as an abuse of discretion).

The government contends that we lack jurisdiction because there is "no law at all" addressing the reinstatement of voluntarily withdrawn applications for asylum. That no statute or regulation specifically governs reinstatement does not, however, mean that there are no meaningful standards against which to evaluate the BIA's denial of a request for reinstatement. Mendez–Gutierrez's request to reinstate his withdrawn asylum application is analogous, at least to some degree, to a motion to reopen, which is governed by a clear set of rules and regulations. *See, e.g.,* 8 C.F.R. § 3.2 (2002), *recodified at* 8 C.F.R. § 1003.23. In both situations, the petitioner is asking the IJ to consider a claim for relief that is no longer pending.

■■■ Indeed, by requiring Mendez–Gutierrez to show prima facie eligibility for

---

**5.** This case is governed by the permanent provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), as removal proceedings against

Mendez–Gutierrez began after IIRIRA's effective date of April 1, 1997. *See Kalaw v. INS,* 133 F.3d 1147, 1149–50 (9th Cir.1997); *see also* 8 U.S.C. § 1252.

relief in order to prevail on his request for reinstatement of his application, the BIA itself turned to the standards applicable to the granting of motions to reopen. *See Ramirez–Alejandre v. Ashcroft,* 319 F.3d 365, 376 (9th Cir.2003) (BIA may not grant a motion to reopen unless applicant previously has established a prima facie case of eligibility for relief); *see also In re G–C–L,* 23 I. & N. Dec. 359, 361 (BIA 2002) (prima facie eligibility for asylum is a requirement for granting a motion to reopen). In arguing that it was correct for the BIA to require a showing of prima facie eligibility, the government acknowledges the similarity between Mendez–Gutierrez's reinstatement request and a motion to reopen, noting that, "like a motion to reopen, his reinstatement request sought to bring a closed matter back to life."

Moreover, aliens who have challenged removal proceedings after voluntarily withdrawing their applications for asylum typically have used motions to reopen as the procedural mechanism for bringing the challenge. *See Cano–Merida v. INS,* 311 F.3d 960, 963 (9th Cir.2002) (petitioner filed motion to reopen asylum application that he had voluntarily withdrawn after IJ warned him he had no valid claim for asylum); *Konstantinova v. INS,* 195 F.3d 528, 529 (9th Cir.1999) (petitioner withdrew asylum application, accepted voluntary departure, and then filed a motion to reopen asylum case based on new evidence); *Bolshakov v. INS,* 133 F.3d 1279, 1281 (9th Cir.1998) (same). That Mendez–Gutierrez sought to reinstate his asylum application before the IJ issued an order of removal, rather than filing a motion to reopen after the order was issued, does not deprive us of meaningful standards for judicial review of the BIA's action. Accordingly, we hold that we have jurisdiction to review the BIA's denial of Mendez–Gutierrez's request to reinstate his withdrawn application for asylum, as we would over the denial of a motion to reopen. 8 U.S.C. § 1252(b).

*II.*

■■■ Because we are proceeding by analogy to the standards applicable to the denial of a motion to reopen, we review the BIA's denial of Mendez–Gutierrez's request to reinstate his asylum application for abuse of discretion. *See Salta v. INS,* 314 F.3d 1076, 1078 (9th Cir.2002) (denial of motion to reopen is reviewed for abuse of discretion). Our review is limited to the grounds on which the BIA based its denial. *Martinez–Zelaya v. INS,* 841 F.2d 294, 296 (9th Cir.1988).

■■■ The BIA determined that Mendez–Gutierrez was not prejudiced by the IJ's refusal to reinstate his asylum application because the application did not demonstrate prima facie eligibility for asylum, as it did not set forth a valid claim of past persecution.[6] As we noted earlier, prima

---

6. Although it is not entirely clear whether Mendez–Gutierrez is challenging this conclusion, we would reject such a challenge in any event, because the BIA's finding regarding past persecution is supported by substantial evidence. *See Hoxha v. Ashcroft,* 319 F.3d 1179, 1182 n. 4 (9th Cir.2003) (stating that we must affirm the BIA's finding on eligibility for asylum if it is supported by substantial evidence). We have held that "[unfulfilled] [t]hreats standing alone ... constitute past persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm."

*Lim v. INS,* 224 F.3d 929, 936 (9th Cir.2000) (finding that alien who had received numerous death threats, and whose colleagues were murdered by the military, had not suffered past persecution). We cannot conclude that the unspecified threats against Mendez–Gutierrez were sufficiently menacing to constitute past persecution, as we do not even know what the threats entailed. Nor do the occasional incidents of detention and interrogation rise to the level of past persecution. *See Khourassany v. INS,* 208 F.3d 1096, 1100 (9th

facie eligibility for the relief sought is a prerequisite for the granting of a motion to reopen. *See Ramirez–Alejandre,* 319 F.3d at 376; *In re G–C–L,* 23 I. & N. Dec. 359 at 361. It was appropriate for the BIA to apply this requirement to Mendez–Gutierrez's request for reinstatement, because it would be unreasonable to put the government to the time and expense of an evidentiary hearing on a previously terminated application if there is no chance that the application will be successful. The BIA therefore did not abuse its discretion by requiring Mendez–Gutierrez to show prima facie eligibility for asylum.[7]

In determining that Mendez–Gutierrez's application failed to make the required showing, however, the BIA's inquiry was incomplete. "A person is prima facie eligible for asylum if he can show that he is a refugee." *Mejia v. Ashcroft,* 298 F.3d 873, 877 (9th Cir.2002); *see also* 8 U.S.C. 1158(b)(1). A person may qualify as a refugee " *either* because he or she has suffered past persecution *or* because he or she has a well-founded fear of future persecution" on account of certain enumerated grounds. 8 C.F.R. § 208.13(b) (2002) (emphasis added). A finding that an asylum applicant has not suffered past persecution does not render the applicant ineligible for asylum if the applicant can show that he or she has a well-founded fear of future persecution. *See Hoxha v. Ashcroft,* 319 F.3d 1179, 1182 (9th Cir.2003) (holding that petitioner who had not demonstrated past persecution was nonetheless eligible for asylum because he had established a well-founded fear of future persecution).

It is clear from the face of Mendez–Gutierrez's application that he is alleging that he has a well-founded fear of future persecution, in addition to claiming that he has suffered past persecution. Indeed, it is difficult to construe Mendez–Gutierrez's statement that "being a member of the P.A.N. has meant the threat of my life if I were to return to Mexico. . . . I believe that I would be killed if I return to Mexico" as anything other than an assertion of a fear of future persecution. In denying his request for reinstatement, however, the BIA evaluated only Mendez–Gutierrez's claim of past persecution; it did not consider his claim of a well-founded fear of future persecution. In failing to address this separate ground for relief, the BIA abused its discretion. *Mejia,* 298 F.3d at 878–80 (BIA abused its discretion by neglecting to address all of petitioner's claimed bases for asylum).

Although it appears doubtful that Mendez–Gutierrez will be able to establish a well-founded fear of future persecution, given the PRI's loss of the Mexican presidency to PAN member Vincente Fox in 2000, we note that the political climate in Mexico is fluid. *See* John Authers and Sara Silver, *Mexican President Suffers Election Blow,* N.Y. Times, July 8, 2003 (reporting that as a result of the most recent congressional election in Mexico, the PRI will far outnumber the PAN in the new congress). In any event, it is not for us to determine in the first instance whether Mendez–Gutierrez has shown a well-founded fear of persecution. *See INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 356, 154 L.Ed.2d 272 (2002) (per curiam). Accordingly, we grant the petition and remand to the BIA for reconsideration of whether Mendez–Gutierrez has established a prima facie case of eligibility for asylum.

Cir.2000) (repeated detention and questioning by the police did not constitute persecution).

**7.** Because the BIA required only a showing of prima facie eligibility, we need not determine whether the other requirements for a motion to reopen are appropriately applied to requests for reinstatement of withdrawn asylum applications, or whether Mendez–Gutierrez is able to satisfy those requirements.

PETITION GRANTED; REMANDED
FOR FURTHER PROCEEDINGS.