**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2778
_____

ELLYANA SUKWANPUTRA;
YULIUS SUKWANPUTRA,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A079-312-251 & A079-312-252)
Immigration Judge: Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 5, 2010

Before: BARRY, STAPLETON and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 18, 2010)
_____

OPINION
_____

PER CURIAM.

Ellyana Sukwanputra and her husband, Yulius, (collectively, "petitioners") seek

review of a final order of removal entered by Board of Immigration Appeals ("BIA"). In

proceedings before the Immigration Judge ("IJ"), petitioners withdrew their applications for asylum and withholding of removal in exchange for a grant of voluntary departure, but they changed their minds several months later and moved to rescind the decision to withdraw the applications for relief. The IJ denied the motion to rescind, and the BIA affirmed. Finding no error in the agency decisions, we will deny the petition for review.

I.

This matter is before the Court for a second time, and the parties are familiar with the prior history. See Sukwanputra v. Gonzales, 434 F.3d 627 (3d Cir. 2006). Briefly, petitioners are ethnic Chinese Christians, natives and citizens of Indonesia. They entered the United States in 1999, overstayed visitor visas, and conceded removability after being placed in removal proceedings in 2001. Ellyana sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Yulius initially sought relief under his wife's application but later submitted his own application for relief.

In 2002, an IJ rejected Ellyana's credibility; refused to admit various documents into evidence; denied the asylum request as untimely filed; and denied other relief. The BIA affirmed that decision. This Court granted a petition for review and remanded for reconsideration of the withholding of removal claim. Among other things, we explained that the IJ erred in failing to afford Ellyana an opportunity to authenticate documents that she relied upon to corroborate her claim of past persecution, and thus we remanded "so that the authenticity of the documents may be reconsidered, and, if found genuine, the

2

credibility of [Ellyana] reevaluated for purposes of the withholding of removal claim."
434 F.3d at 636 (footnote omitted). We observed that the IJ's credibility determination "was not based upon any evidence in the record, but upon speculation and conjecture." Id. at 637 (citation omitted). Further, because the IJ had rejected Ellyana's claimed fear of future persecution without addressing her contention that a pattern or practice of persecution exists in Indonesia, we directed that the pattern-or-practice claim be considered on remand. Id. Finally, we held that we lacked jurisdiction to review the untimely filed asylum claim, and that petitioners had waived review of the CAT claim.

The matter was reassigned to a different IJ (the Honorable Charles M. Honeyman) on remand. Petitioners initially informed the IJ that they wished to proceed with their claims, and Yulius submitted his own application for asylum and withholding of removal. However, at a hearing on May 30, 2007, petitioners elected to withdraw their applications for relief in exchange for an order that would permit voluntary departure from the United States on or before March 27, 2008. Petitioners made this decision after discussing with the IJ numerous precedential decisions which indicated that they were unlikely to succeed on the merits of their claims, including, inter alia, Lie v. Ashcroft, 396 F.3d 530 (3d Cir. 2005) (finding no pattern or practice of persecution against ethnic Chinese Christians in Indonesia). In agreeing to withdraw the applications, petitioners reserved the right to move to reopen the case during the voluntary departure period in the event that Congress was to pass then-pending Comprehensive Immigration Reform ("CIR") legislation, as

3

petitioners hoped that the CIR legislation would allow them to adjust status or otherwise remain in the United States. Petitioners also reserved the right to reopen in the event of a significant change in country conditions in Indonesia. After confirming on the record that petitioners had considered their options and desired to withdraw the applications for relief, the IJ postponed entry of an order of voluntary departure until November 30, 2007, thereby affording petitioners time to await Congressional action on the CIR legislation.

On September 19, 2007, after it became apparent to petitioners that Congress would not pass the CIR legislation, they filed a motion to rescind the withdrawal of their asylum and withholding of removal claims, and to withdraw the request for voluntary departure. The government opposed the motion to rescind, arguing that petitioners should be held to the terms of their bargain. The IJ agreed and denied relief.

The IJ relied in part upon Matter of B-B-, 22 I&N Dec. 309, 311 (BIA 1998), where the BIA noted that (i) "there are strong policy reasons for strictly adhering to and enforcing voluntary departure orders, not the least of which is to discourage dilatory behavior," and (ii) "subsequent dissatisfaction with a strategic decision of counsel is not grounds to reopen." A.R. at 74. The IJ observed that, "in this case by analogy [petitioners] are seeking to reopen the record and allow for these proceedings to commence and to resuscitate their asylum and withholding claims." Id. After reviewing the course of proceedings in the case, the IJ concluded that petitioners' applications "were effectively withdrawn on May 30, 2007," and petitioners failed to "present[] any evidence

4

that was not discoverable or available on that date that would suggest some type of material change in position or circumstances relative to their individualized factual claims that can any way justify a grant of this motion." A.R. at 75. The IJ thus held that petitioners failed to show good cause to renounce their "strategic decision" to withdraw the applications, observing that "to allow [petitioners] to retreat from such a position would be a disastrous outcome for the potential for any reasonable negotiations and discussions to resolve matters in a non-adversarial fashion in the future in similarly situated cases." Id. at 77. Given petitioners' expressed desire not to depart voluntarily, the IJ ordered removal to Indonesia.

The BIA affirmed for the reasons expressed by the IJ and dismissed petitioners' appeal. The BIA noted that petitioners were not claiming deficient performance of counsel or any extenuating circumstance for changing their minds. Further, the BIA noted that petitioners did not establish changed or extraordinary circumstances to justify a consideration of their untimely filed asylum applications. Petitioners timely filed their petition for review in this Court.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). "Where, as here, the BIA adopts and affirms the decision of the IJ, as well as provides its own reasoning for its decision, the Court reviews both the decisions of the IJ and the BIA." Hashmi v. Att'y Gen., 531 F.3d 256, 259 (3d Cir. 2008). Petitioners' motion to rescind the withdrawal of

5

their applications for relief was in effect to a motion to reopen proceedings before the IJ, albeit one filed prior to actual entry of the final order in the case. Like the denial of a motion to reopen, we will review the denial of petitioners' motion for abuse of discretion. See Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006) ("We review the BIA's denial of a motion to reopen for abuse of discretion, and review its underlying factual findings related to the motion for substantial evidence.") (citation omitted); see also Mendez-Gutierrez v. Ashcroft, 340 F.3d 865, 869 (9th Cir. 2003) (explaining that "[b]ecause we are proceeding by analogy to the standards applicable to the denial of a motion to reopen, we review the BIA's denial of [petitioner]'s request to reinstate his asylum application for abuse of discretion"). An abuse of discretion is found only if the decision is "arbitrary, irrational, or contrary to law." Khan v. Att'y Gen., 448 F.3d 226, 233 (3d Cir. 2006).

Petitioners argue that the IJ applied an "incorrect standard" in reviewing their motion to rescind inasmuch as the IJ relied upon Matter of B-B-, 22 I&N Dec. 309 (BIA 1998). Petitioners note that, unlike the present case, Matter of B-B- involved a motion to reopen filed after expiration of the period for voluntary departure, and the petitioners in Matter of B-B- asserted that their counsel provided ineffective assistance by dissuading them from applying for asylum, whereas petitioners here do not claim that counsel was ineffective. Petitioners thus argue that their case is factually distinguishable from Matter of B-B-, and because they contend that no prejudice or further delay in the proceedings would have resulted, the IJ should have granted their request to rescind as "a matter of

6

grace or discretion."  We cannot agree.

Petitioners do not dispute that they knowingly and voluntarily withdrew their applications for relief at the May 30 hearing, a decision that they made with the advice of counsel.  Further, they agreed to withdraw their applications only after an "exhaustive discussion," A.R. at 187, with the IJ regarding the evident weakness of their claims for asylum and withholding of removal.  Almost four months after withdrawing the applications and agreeing to accept voluntary departure, petitioners then changed their minds, but only because Congress had failed to enact the CIR legislation.[1]  Petitioners, however, were fully aware of the CIR legislation when they made the decision to withdraw the applications for relief, and they did not reserve the right to reinstate the applications should the CIR legislation fail.  Rather, they reserved the right to reopen only if favorable CIR legislation was passed, or if there was a substantial change in country conditions in Indonesia – neither of which transpired.

Given this record, we discern no abuse of discretion.  The IJ correctly observed that petitioners made a strategic decision to withdraw their claims for relief in exchange for the grant of a lengthy voluntary departure period, and the IJ cited sound reasons for

---

[1] In their brief to the BIA, petitioners explained that they moved to rescind the decision to withdraw "soon after it became apparent that [CIR legislation] would not pass," and that "[t]heir change f[ro]m the position they expressed at the May 30, 2007 hearing is more about the fact that they realized they could not in good faith tell the IJ they would accept voluntary departure, when they truly realized they could not after CIR failed."  A.R. at 13-14.

refusing to allow petitioners to return to "square one" several months later. Petitioners were made aware at the May 30, 2007, hearing that the CIR legislation might not become law, see A.R. at 189, and there is no evidence that they failed to consider that fact in weighing whether to withdraw the applications for relief. Further, as both the IJ and BIA found, petitioners cited no new material fact or any extenuating circumstance to support their change of mind. Nor have petitioners claimed that counsel provided incompetent assistance. The record is simply devoid of any showing of good cause to reopen the matter. Cf. Guo v. Ashcroft, 386 F.3d 556, 561-62 (3d Cir. 2004) (noting that motions to reopen "are granted only under compelling circumstances" and are "disfavored" because "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States") (quoting INS v. Doherty, 502 U.S. 314, 323 (1992)).

Petitioners' attempt to distinguish Matter of B-B- on the facts is of no moment. The IJ correctly observed that the policy reasons identified in Matter of B-B- for enforcing a voluntary departure order in the face of a motion to reopen proceedings apply equally in the present case, where petitioners sought to reinstate their applications for relief after accepting a generous agreement that allowed formal entry of the voluntary departure order to be deferred several months into the future.[2] In both situations, "there

_____

[2] Petitioners stress that their case is different because the IJ did not formally qualify them for voluntary departure at the May 30 hearing, and a voluntary departure order was never actually entered. However, the record fully supports the IJ's finding that

8

are strong policy reasons for strictly adhering to and enforcing voluntary departure orders, not the least of which is to discourage dilatory behavior." Matter of B-B-, 22 I&N Dec. at 311. Further, the BIA has emphasized that mere "subsequent dissatisfaction with a strategic decision" is insufficient grounds to reopen proceedings. Id. The record supports the IJ's determination that refusing to reopen this case would both protect interests of finality in proceedings and serve to foster the non-adversarial resolution of similar cases in the future. Accordingly, we reject petitioners' challenge to the denial of their motion to rescind.[3]

### III.

For the foregoing reasons, we will deny the petition for review.

---

entry of a voluntary departure order for petitioners would have been a "ministerial task" involving nothing more than "issuing a minute order." A.R. at 73. Moreover, petitioners have never claimed that they would have failed to qualify for voluntary departure at the scheduled November 28, 2007, hearing for entry of the order. Thus, on the facts presented here, petitioners motion to rescind was no different in practical terms than a motion to reopen filed after formal entry of a voluntary departure order, and the IJ did not err in treating it as such.

[3] Given this conclusion, we do not reach petitioners' argument that they can demonstrate eligibility for asylum and withholding of removal. We note, in any event, that petitioners' representations regarding the merits of their claims for relief are strongly undercut by their concession before the IJ as to the weakness of their claims under current law. Further, as the government explains in its brief, petitioners' asylum applications were untimely filed, and the BIA expressly determined that petitioners did not show changed or extraordinary circumstances to allow their untimely claims to be considered. See A.R. at 4; 8 C.F.R. §§ 1204.4(a)(4) and (5). Petitioners' withholding of removal claim based on a pattern or practice of persecution in Indonesia fares no better. See Wong v. Att'y Gen., 539 F.3d 225, 233 (3d Cir. 2008); Lie, 396 F.3d at 537. Thus, we discern no prejudice to petitioners from the IJ's refusal to address their claims.

9