FILED
United States Court of Appeals
Tenth Circuit

October 12, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALAN JOVANY HIDALGO-NUNEZ,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 22-9518
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

Petitioner Alan Jovany Hidalgo-Nunez's case appears before us on a petition for review from the Board of Immigration Appeals (BIA). The BIA affirmed the immigration judge's decision to deny Petitioner withholding of removal and protection under the United Nations Convention Against Torture (CAT). Petitioner asks us to review the BIA's disposition of his case. Exercising jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), we deny the petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

The facts of this case are reflected in Petitioner's written statements and oral testimony, both of which the immigration judge found credible. Petitioner is a Mexican citizen from the town of Neuva Italia in Michoacan. Petitioner's extended family have been subject to several violent incidents at the hands of drug cartels in Neuva Italia. In November 2006, the Los Zetas drug cartel extorted members of Petitioner's family and threatened to kidnap one of his cousins if they refused the cartel's demands for money. The family, however, was unable to pay. The cartel kidnapped Petitioner's cousin and he was never seen again. Years after the first incident, in 2015, Petitioner's cousin was kidnapped and murdered by another drug cartel operating in Neuva Italia, the Knights Templar, after Petitioner's uncle refused to pay them protection money. About 5 months after his cousin's murder, the Knights Templar murdered Petitioner's uncle as well.

Meanwhile, in 2006, Petitioner's immediate family decided to leave Neuva Italia. In December 2006, Petitioner, who was 14 years-old at the time, unlawfully entered the United States with his parents and siblings. Petitioner then lived an unobtrusive life in the United States for over a decade—until a September 2017 arrest for driving under the influence attracted the attention of the Department of Homeland Security (DHS). DHS filed a Notice to Appear (NTA) and initiated the present removal proceedings. Thereafter, Petitioner appeared before an immigration judge with counsel and admitted the factual allegations articulated in the NTA and conceded its charges. Petitioner then applied for relief in the form of withholding of removal and protection

under the CAT.  Through written submissions and oral testimony, Petitioner sought to establish his eligibility for withholding of removal on the basis of his membership in a particular social group (PSG)—"the Hidalgo-Nunez family."  Petitioner argued his familial ties qualified as a PSG because of kidnapping and disappearance of his cousin at the hands of the Zetas and because his uncle and other cousin had been murdered by the Knights Templar.

The immigration judge considered Petitioner's submissions and testimony and rejected his application.  The immigration judge explained in an oral decision that Petitioner "ha[d] not shown that it is more likely than not that he would be persecuted on account of a protected ground."  The immigration judge noted that Petitioner had numerous relatives still living in Neuva Italia "and there has been no evidence that they have been harmed because of the family relationship since the uncle and the cousin were killed."  The immigration judge also emphasized Petitioner's testimony that he feared being targeted because he had returned from the United States and might be perceived as having money.  The immigration judge explained that "[f]ear of being kidnapped or robbed by gang members for monetary gain is not connected to a protected ground."  The immigration judge therefore concluded that Petitioner had failed to demonstrate a history of past persecution or a likelihood of future persecution.

As for relief under the CAT, the immigration judge concluded that no evidence in the record supported the conclusion that Petitioner "would be singled out for torture."  Because there was no evidence that Petitioner had ever been tortured in Mexico, the immigration judge considered the circumstances of Petitioner's similarly

situated relatives and the Mexican government's efforts to combat the drug cartels. Petitioner appealed the immigration judge's decision to the BIA. In a decision rendered by a single judge, the BIA affirmed the immigration judge's decision "for the reasons articulated in the Oral Decision of the Immigration Judge." This petition for review followed. Petitioner challenges the BIA's denial of both his application for withholding of removal and relief under the CAT.

II.

When, as here, the BIA affirmed the immigration judge's decision in an order issued by a single judge, "we review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). We are not, however, "precluded from consulting the IJ's more complete explanation of those same grounds" in order "to understand the grounds provided by the BIA." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "[R]esort to the IJ's decision is appropriate in situations where the BIA incorporates the IJ's rationale or a summary of its reasoning." *Diallo*, 447 F.3d at 1279 (citing *Uanreroro*, 443 F.3d at 1204).

"We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005) (citing *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2003)). "Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour*, 378 F.3d at 1150 (citation omitted). "The BIA's findings of fact are conclusive

unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Niang*, 422 F.3d at 1196 (quoting *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004)).

### III.

Petitioner first challenges the BIA's resolution of his application for withholding of removal. Withholding of removal is a form of relief from deportation that prevents the Government from removing "an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

To be eligible for withholding of removal, Petitioner "must 'establish a clear probability of persecution in that country on the basis of race, religion, nationality, membership in a particular social group, or political opinion.'" *Matumona v. Barr*, 945 F.3d 1294, 1304 (10th Cir. 2019) (quoting *Elzour*, 378 F.3d at 1149). As relevant here, a family can qualify as a PSG—so long as an applicant can demonstrate the necessary "nexus" between the familial tie and the persecution. *See Hueso-Choto v. Garland*, No. 21-9542, 2022 WL 128573, at *2 (10th Cir. Jan. 14, 2022); *Matter of L-E-A-*, 27 I. & N. Dec. 40 (BIA 2017). The Code of Federal Regulations presumes an applicant will suffer future persecution if they are found to have suffered past persecution, subject to certain exceptions. 8 C.F.R. § 1208.16(b)(1)(i). Even in the absence of the presumption, however, an applicant can still establish his eligibility for withholding of removal "by a showing that 'it is more likely than not that the alien

5

would be subject to persecution on one of the specified grounds' upon returning to [his] country of origin." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quoting *INS v. Stevic*, 467 U.S. 407, 429–30 (1984)).  We define persecution as "requir[ing] the 'infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive' and requir[ing] 'more than just restrictions or threats to life and liberty.'"  *Woldemeskel v. INS*, 257 F.3d 1185, 1188 (10th Cir. 2001) (quoting *Baka v. INS*, 963 F.2d 1376, 1379 (10th Cir. 1992)).

Petitioner challenges the BIA's conclusion that he is ineligible for withholding of removal.  Because the BIA concluded Petitioner had not shown a history of past persecution, Petitioner did not benefit from the regulatory presumption in favor of future persecution.  Petitioner does not contest that determination and instead focuses his arguments on whether he can establish a likelihood of future persecution.  To that effect, Petitioner argues the BIA erred by failing to take Petitioner's fear of harm from the Knights Templar, as well as the immediacy of that threat, into account.  According to Petitioner, the timing of his cousin's and uncle's murder demonstrates the immediacy of the threat he would face if he returned to Neuva Italia.  But substantial evidence supports the BIA's decision.  The record shows that although Petitioner's family received threats before his uncle and cousin were murdered by the Knights Templar, there was a significant delay between the threats and the first murder, as well as between the two murders themselves.  Petitioner acknowledges this, admitting that "Petitioner's uncle, who failed to pay the Knights Templar protection money, was *eventually* killed by that same organization."  Br. of Pet'r 7 (emphasis added).  Further,

6

even though Petitioner also testified that his family members have continued to receive threats from the Knights Templar, nothing in the record shows that "they are so immediate and menacing as to cause significant suffering or harm in themselves." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) (citing *Mendez-Gutirrez v. Ashcroft*, 340 F.3d 865, 869 n.6 (9th Cir. 2003)).

Petitioner next argues the BIA erred in concluding "that the harm suffered by Petitioner, his family, and his fear of future persecution was not on account of his family ties."  Br. of Pet'r 8.  Without meaningfully specifying more, Petitioner contends there is "overwhelming evidence demonstrat[ing] that Petitioner's family is still receiving direct threats by several gang members precisely because of their membership in the Family." *Id.*  The record only reflects three incidents of violence carried out against Petitioner's family: the 2006 disappearance of Petitioner's cousin and the 2015 murders of Petitioner's uncle and other cousin.  As noted above, Petitioner testified that his relatives in Neuva Italia have continued to receive threats, but did not describe them in any detail.  Significantly, Petitioner indicated that he was afraid that he would be targeted because he had returned from the United States and would be perceived as having money.  Collectively, these facts fail to demonstrate the necessary "nexus" between the persecution and the family ties, which "is not established simply because a particular social group of family members exists and the family members experience harm." *Matter of L-E-A-*, 27 I. & N. Dec. at 45.  We note the fact that the incidents of significant gang violence perpetrated against members of Petitioner's family occurred almost a decade apart and were committed by two

different criminal organizations. Based on all of these considerations, we believe the facts of this record show that substantial evidence supported the BIA's decision and that Petitioner has "failed to show that his family suffered the attacks because they were members of his family, rather than because the perpetrators were criminals who simply sought money and property." *Saucedo-Miranda v. Barr*, 785 F. App'x 586, 590 (10th Cir. 2019) (unpublished).

Petitioner also points us to a decision from the Ninth Circuit, *J.R. v. Barr*, 975 F.3d 778 (9th Cir. 2020), which he believes presents analogous circumstances to his and counsels in favor of reversing the BIA's decision. We disagree. Although the Ninth Circuit reversed the BIA in *J.R.*, it did so based on more significant evidence of personal harm than Petitioner presented here. For instance, the Petitioner in *J.R.* had been shot seven times and had two of his fingers cut off by gang members. 975 F.3d at 784. We have previously relied on significant factual differences in the level of future harm presented in cases to distinguish opinions in this context and believe the facts of *J.R.* are sufficiently distinct from those before us to discount it without inquiring further. *See Lopez v. Barr*, 773 F. App'x 459, 462 (10th Cir. 2019) (unpublished). In sum, the BIA's decision to reject Petitioner's application for withholding of removal was supported by substantial evidence and none of Petitioner's arguments "demonstrate[] that any reasonable adjudicator would be compelled to conclude to the contrary." *Niang*, 422 F.3d at 1196 (citation omitted).

Petitioner's second and final challenge is to the BIA's rejection of his application for relief under the CAT. "To receive the protections of the CAT, an

8

applicant must demonstrate 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Ritonga v. Holder*, 633 F.3d 971, 978 (10th Cir. 2011) (quoting 8 C.F.R. § 1208.16(c)(2)). Unlike claims for withholding of removal, "there is no requirement that the petitioner[] show that torture will occur on account of a statutorily protected ground." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005). Instead, an applicant need only show that he "would be [subject to treatment] so severe as to constitute torture." *Ritonga*, 633 F.3d at 978 (citing *Elzour*, 378 F.3d at 1150). That torture must be "by a public official, or at the instigation or with acquiescence of such an official." *Cruz-Funez*, 406 F.3d at 1192 (quoting *Matter of G-A-*, 23 I. & N. Dec. 366, 367 (BIA 2002) (en banc) (citations omitted)). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity. Such awareness requires a finding of either actual knowledge or willful blindness." 8 C.F.R. § 1208.18(a)(7).

Petitioner contends that the BIA erred when it concluded that Petitioner failed to show he would more likely than not be tortured with the acquiescence of a public official if he is returned to Mexico. According to Petitioner, the BIA "ignored substantial evidence" of his fear of the Knights Templar and failed to give proper weight to the country conditions reports in the record. Br. of Pet'r 12. The immigration judge concluded, however, that Petitioner failed to show it was more likely than not that he would be tortured in Mexico because many of his similarly situated relatives

continue to live in Mexico without being tortured. The immigration judge also considered the country conditions report supplied by Petitioner and concluded that the Mexican government's efforts to combat crime precluded a finding of acquiescence.

We have reviewed Petitioner's arguments and the record on appeal. While Petitioner presented evidence "show[ing] human rights abuses committed in the country of Mexico," without more, "pervasive violence in an applicant's country generally is insufficient to demonstrate the applicant is more likely than not to be tortured upon returning there." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362 (10th Cir. 2019) (citation omitted). Further, "[t]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Niang*, 422 F.3d at 1196 (citation omitted); *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations omitted). We cannot conclude that Petitioner has met that standard based on this record.

IV.

For the foregoing reasons, we **DENY** the petition for review.

Entered for the Court

Bobby R. Baldock
Circuit Judge